## In re Anonymous No. 17 D.B. 80

Disciplinary Board Docket no. 17 D.B. 80.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania

ANDERSON, *Board Member,* December 30, 1980—Pursuant to Pa.R.D.E. 218(a)(4), the Disciplinary Board herewith submits its findings and recommendation to your honorable court with respect to the above referenced petition for reinstatement.

### I. HISTORY OF PROCEEDINGS

Petitioner, on October 3, 1969, was delivered a copy of the report and recommendation of the Board of Governors of the Pennsylvania Bar by Walter B. Gibbons, Chief Standing Master of the Board of Governors of the Pennsylvania Bar, which recommended he be disbarred. On November 25, 1969, a certified copy of an order by the Court of Common Pleas of [ ] County disbarred petitioner from the practice of law in that court. No appeal was taken from the order and on March 9, 1970 an order was issued by the Supreme Court of Pennsylvania disbarring petitioner from the practice of law in [ ] County and the Commonwealth of Pennsyl-

vania. On March 28, 1980, a petition for reinstatement was filed by respondent through his attorney. Included with the petition for reinstatement was the answered questionnaire and attachments. A hearing committee was empaneled to hear the matter. On July 16, 1980, a notice of the reinstatement hearing was sent scheduling his hearing for August 4, 1980. Respondent appeared at the hearing with his counsel and presented evidence, both oral and written, to substantiate his petition for reinstatement. The hearing committee report was filed on September 30, 1980 recommending that reinstatement be granted. Petitioner filed a letter on October 3, 1980 advising the board that it would not file briefs on exception. The matter was referred to the board for review and adjudication. The board, on October 24, 1980, recommended that respondent be reinstated.

## FINDINGS OF FACT

1. Respondent was disbarred through his own admission to infractions in the following matters:

a. respondent was engaged to represent [A] in a divorce action. He told [A] it was necessary to hire an attorney from another county and was paid $100 by [A] for this. Respondent never hired another attorney and took the money for his own use. Additionally, he lied to his client and cashed the check forging the name of the other attorney whom he never hired.

b. respondent was engaged by [B] to represent her in an accident case. Settlement was made and respondent took a fee, which was larger than the original fee he agreed on. Respondent additionally did not pay the medical bills as agreed and [B] made a complaint. Respondent had agreed to pay the medical bills out of his portion of the fee.

c. [C] respondent purchased men's apparel at [C's] Clothing Store and gave them a check on a bank in which he had no account. Respondent, after numerous promises, did not pay this bill.

d. [D] respondent purchased men's apparel at [D's] Clothing Store and made payment of a personal check which was returned for insufficient funds. Despite numerous promises, respondent did not pay the bill.

e. [E's Restaurant] respondent incurred an obligation there and used an improper charge card. He also gave them a personal check which was returned for insufficient funds and never paid.

f. [F] respondent presented to [F], a deputy prothonotary, a decree in divorce and asked that it be certified. The decree was a fraud because no divorce had been granted at the time the certification was s requested.

g. [G] respondent was engaged by [G] to represent her in a personal injury matter. The case was settled without the knowledge of [G] and respondent took the funds for his own use.

h. [H] respondent offered to cash a check for [H] and instead paid off a debt and refused to give the remaining moneys to [H].

i [I] respondent was engaged to represent [I] in a divorce action. He stated, after payment of a fee, that he had filed for a divorce and a hearing was to be held shortly. Subsequently, she was advised a decree had been entered, although she never received it. Upon inspection of the court records, it was found that only a complaint had been filed.

j. [J] respondent was engaged by [J] to represent him in a divorce action. He reported to [J] that the complaint had been filed and pending, when in fact this had not been done. At a hearing before the board of governance, he stated he was going to file

the matter in [X] County, because it was necessary to do so. Later investigation showed it was filed in [Y] County.

2. Respondent was disbarred on March 9, 1970.

3. Respondent sent a letter to each of his clients advising them of his disbarment.

4. Respondent left Pennsylvania in 1970 and returned in 1977.

5. During his disbarment, respondent in no way practiced law or held himself out as an attorney.

6. Respondent has been employed with a law firm as a paralegal since his return to Pennsylvania in 1977.

7. Respondent, since the time of his departure from Pennsylvania in 1970, until the reinstatement proceeding, had received psychiatric help for periods of time and has additionally been a patient in a mental institution.

8. Respondent filed a petition for reinstatement on March 28, 1980.

9. A reinstatement hearing was held on August 14, 1980 with respondent, his attorney and Disciplinary Counsel present.

10. Respondent presented both oral and written evidence at his reinstatement hearing.

11. Respondent, with his petition, filed the necessary questionnaire and answered all of the questions fully and truthfully.

12. No persons from the general public or community came forward to oppose the readmission of respondent.

13. Respondent did produce in his own behalf, persons who testified as to his character, capabilities and learning in the law.

14. The hearing committee filed a report on September 30, 1980, recommending the reinstatement of respondent.

## III. DISCUSSION

A respondent involved in a petition for reinstatement is required to fulfill the requirements of the Pennsylvania Rules of Disciplinary Enforcement in that " a disbarred attorney has the burden of showing clear and convincing evidence that they have the moral qualifications, competency and learning in law required for admission to practice law." They must also show that if they do resume their practice, they possess the integrity which will not be detrimental to the standing of the bar or the administration of justice nor subvert the public interest. Respondent in this case presents the board with a unique opportunity to, in fact, examine and put into practice all of the elements of this rule. Respondent was disbarred for approximately ten years, during which he allegedly received psychiatric help to cure the illness to which he attributed his admitted wrongful actions. The board considered both the gravity of the acts of which he was accused, some of which were very irrational and against his own personal interest, others against the interest of his clients and his profession.

This is the first application for reinstatement from an attorney who has been disbarred for the length of time of respondent. Although he had the right to apply for reinstatement within five years of his disbarment, he voluntarily delayed this application. Respondent asserted his application for reinstatement was not placed before the board prior to this time because he needed assurance that he was psychologically and scholastically adequate to return to the practice of law. He reapproached the practice of law working with a firm as a paralegal. At the time of the hearing, he had been employed in that capacity for one and a half years. He had left a very successful job in Washington, D.C., employed

as a salesman, and decided to re-enter a world which he had left in disgrace. Additionally, respondent pursued a unique and voluntary course of showing his competence and learning in the law, in that he took and passed the Pennsylvania Bar Examination, although it is not a requirement of the rules in measuring the competence of an attorney to practice law. It is also the first time that this has been done by any respondent on a voluntary or involuntary basis in a reinstatement proceeding. Respondent has established, in the feeling and reasoning of this board, which also agrees with the decision of the hearing committee, that respondent did show by clear and convincing evidence his competency and also the learning in the law to practice in the Commonwealth of Pennsylvania.

There was a consideration as to respondent's integrity. The hearing committee, in its report, did not dwell on the infractions that had resulted in the disbarment of respondent some ten years ago and this shows their satisfaction as to the integrity of respondent. The hearing committee acted correctly in this non-recitation for there was more than adequate showing in the doctor's report that respondent's lack of integrity was not a problem. It was just the maintenance of integrity under the stress of certain sustained attorney stress and strain situations which gave him any problem. The report of Dr. [K] examined the many reasons that respondent had engaged in such blatant and flagrant conduct. Most of his actions had been due to a very low self-esteem which had made him fantasize as to his importance in his profession, in his home, in his life and in his mind. These problems were now believed by the doctor to be under great control by respondent.

It should be pointed out that the Disciplinary Counsel who was present at this hearing and tried

the matter for respondent also has implied, by the lack of a filing of exceptions, that he has found nothing to challenge the evidence produced by respondent and the decision of the hearing committee. The aggressiveness and the vast ability of the Office of Disciplinary Counsel would in fact have taken the time and produced exceptions if they felt it was merited. This is not to say the board must, in fact, take this as an overwhelming factor in its decision, but it is certainly something which must be given some consideration in establishing what is a safe margin or error in a non "Fail-Safe" world.

The main question involved in this petition, which is the primary point of concern, is whether respondent is psychologically able to cope with the practice of law. To overcome this obvious obstacle, respondent offered the testimony of Dr. [K]. Dr. [K] made his observations and his prognosis for respondent by filing a report with the board. This prognosis was based on respondent's relating to his treatment by Dr. [L]. The examination was made in conjunction with a psychological test administered by Dr. [M]. Dr. [K] gave evidence that he performed an examination on respondent at the request of his attorney and made a report which attested to the ability of respondent to adequately practice law in the Commonwealth. This was stated not only in his report, but in his actual testimony. He went so far as to say he felt respondent was able to cope with the stresses and the strains of the practice of law and that he has recovered sufficiently psychologically to carry on as an attorney. This is the only psychological report, but it was weighed very heavily by the hearing committee and this trust is also placed in it by the board. It was felt that the "pseudological fantastica" which was suffered by respondent was in remission and he was dealing

with the problem. This was evidenced by his return to [   ] from Washington, which the doctor felt was important. Respondent had become involved with his wife and family after a separation of nine years. The doctor, in his testimony, made great mention of the fact that he had returned to [   ]; returned to the actual practice in the law system; and had shown that he had recovered from his illness. In the doctor's own words, ". . . he's come a long way."

There will always be questions in this kind of matter. Questions that state or point up one particular point of the doctor's report and testimony. One of those is the absence of a report by Dr. [L]. Another is that the doctor recommends that it would be better if " . . . and that he probably would actualize himself best in research applied aspects of the law," something which he is doing within the structure of his past employment. Or that he was a good candidate for individual psychotherapy and this should continue after his readmission until he is discharged from care. But the report and the testimony should be taken as a whole just as it was done by the hearing committee and we cannot, as a board, read into these reports what we feel is a "gut reaction" rather than fact. The totality of the circumstances in this case demand reinstatement of respondent, or we will send him on what is "a fool's chase" to fulfill a test we can never totally answer. It is the belief of the board that respondent has done not only all that is academically psychologically necessary, but also all that is humanly possible under the circumstances in proving his adequacy to practice law in this Commonwealth. It is therefore for this reason, after examination of the documents and the notes of testimony, that the board agrees with the recommendation of the hearing committee.

## IV. RECOMMENDATION

It is hereby recommended that respondent be reinstated and that such reinstatement be approved by the court upon payment of the necessary expenses incurred in the investigation and processing of the petition for reinstatement. The cost of these items is in the amount of $379.80, and said expenses are appended to the report.

Mrs. Hammerman and Mr. Krawitz dissent.
Messrs. Harrington and Elliott and Mrs. Neuman did not participate in the adjudication.

## DISSENTING OPINION

ANDERSON, *Member,* December 30, 1980—I dissent to the recommendation of granting the petition for reinstatement of [respondent] for the reason that he has not submitted a recent psychiatric evaluation. The report of Dr. [M] on January 25, 1979 maintains that [respondent] has a potential for acting-out, indulges in hypomanic behavior and has basic inferiority feelings. I have some reservation in endorsing his reinstatement in view of that diagnosis.

Mr. Krawitz joins in the dissent.

## ORDER

O'BRIEN, *C.J.,* And now, January 21, 1981, the recommendation of the Disciplinary Board of the Supreme Court of Pennsylvania dated December 30, 1980 is accepted; and it is ordered, that the suspension of [respondent], is terminated and he will be reinstated to the Bar of the Supreme Court of Pennsylvania and in all the courts under its supervisory jurisdiction, provided he takes the usual

oath of attorneys upon admission to the bar and pays the necessary expenses incurred in the investigation and processing of the petition for reinstatement.